

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL NO. 04-11509-RWZ

DOUGLAS TATRO
v.
UNITED STATES OF AMERICA

**AMENDED PETITION FOR RELIEF PURSUANT TO 28 U.S.C. § 2255 OF DOUGLAS TATRO WITH INCORPORATED MEMORANDUM OF LAW AND CERTIFICATION OF FACTS.**

### I. MOTION/INTRODUCTION.

The petitioner, DOUGLAS TATRO moves this Honorable Court to amend his petition for a writ of *habeas corpus* or other judicial relief, pursuant to 28 U.S.C. §§ 2241 and 2255. For the reasons more particularly described below, the petition and this amendment should be considered as timely filed. As further described below, this motion should be allowed and appropriate relief should be granted.

The defendant requests an evidentiary hearing to resolve issues of fact.

### II. JURISDICTION.

This Court has jurisdiction over the case pursuant to 28 U.S.C. § 2241, as Tatro is a person who is in custody under or by color of the authority of the United States, in violation of his rights under the Constitution of the United States. It has jurisdiction pursuant to 28 U.S.C. § 2255 as there has been an error "of constitutional magnitude with substantial and injurious impact." Brecht v. Abrahamson, 507 U.S. 619 (1993).

### III. STATEMENT OF THE CASE.

**A. SUMMARY OF PROCEEDINGS**

On June 1, 2000, Douglas Tatro was arrested and charged in the United States District

Court. He was later indicted and tried on five charges: one count of conspiracy to possess marijuana with intent to distribute it, in violation of 21 U.S.C. § 846; two counts of possession of marijuana with intent to distribute it in violation of 21 U.S.C. § 841; and two counts of use of a communication facility to facilitate a controlled substance offense, in violation of 21 U.S.C. § 843. After a jury trial, petitioner was convicted on all counts on November 5, 2001. On January 30, 2002, Judge Zobel of the United States District Court sentenced Tatro to a term of imprisonment of ninety seven months.[1] A notice of appeal to the First Circuit was timely filed.

On December 20, 2002, the First Circuit Court of Appeals summarily denied this appeal. A petition for a rehearing *en banc* was denied on March 5, 2003[2] and issued the mandate on March 20, 2003. Meanwhile Tatro waited for his lawyer to notify him of this decision. Tatro repeatedly contacted Gleason's office by telephone, but Gleason was almost never available and did not write or visit him. By letter, he repeatedly requested an update. Attached to the original petition and again here are various letters from Douglas Tatro to Scott Gleason, his trial, appellate and post-conviction lawyer. These letters repeatedly request information about his "second appal - the petition for a rehearing *en banc*.[3] Despite numerous requests Gleason finally notified Tatro of the Court's denial on March 8, 2004 more than one year later, when Gleason finally sent him a copy of their decision.[4] (Affidavit of Petitioner with letter). On March 23,

---

[1] As discussed below, the Court determined that his offense level was thirty and his criminal history was level one.

[2] Although he filed a motion, for reconsideration the First Circuit treated it as a Petition for rehearing *en banc*.

[3] These letters were provided by Attorney Gleason.

[4] As the prison does not deliver mail on the weekends, Tatro did not actually received this letter until March 11th, 2004.

2

2003, Tatro sent his attorney an angry letter and sent a copy to the judge. (A copy of the letter is attached). On April 6, 2004, Tatro wrote a letter directly to Judge Zobel. When he did not hear from the District Court, he wrote to the Court of Appeals on June 3, 2004 and attached a copy of his earlier letter. On July 21, 2004, the Court of Appeals ordered the lower court to treat the letter as a petition under § 2255. The government has responded to it.

**B. STATEMENT OF FACTS.**

At all times, at trial, on his appeal and in the promise to provide post conviction assistance, Douglas Tatro was represented by attorney Scott Gleason. On information and belief, attorney Gleason was not experienced in federal court cases. Specifically, he was not well versed in the federal sentencing guidelines then in effect. Douglas Tatro had never been arrested before and knew nothing of federal procedures.

Gleason and Tatro met a few times, for brief periods, between his arrest and his trial date, although most of the conversations were about legal fees. (See affidavit of petitioner). Without detailing the evidence, or specifying the witnesses against him, Gleason breezily and repeatedly assured Tatro that the evidence against him was marginal and he would be acquitted after trial. (See affidavit of petitioner).

Gleason and Tatro never discussed plea agreements or cooperation. Gleason led Tatro to believe that neither was an option. (See affidavit of petitioner). Gleason never explained the sentencing guidelines to Tatro or the potential sentence he could receive after trial. (See affidavit of petitioner). At no time did he advise Tatro that under the sentencing guidelines, pursuant to U.S.S.G. § 3E.1.1, his sentence would be less if he pled guilty to the charges. (See affidavit of petitioner). He never conveyed any plea offers to Tatro, and specifically never told him that he

3

could resolve the matter with a two year sentence of imprisonment if he pled. (See affidavit of petitioner).

Gleason did little preparation for the trial and did not involve Tatro in the preparation. (See affidavit of petitioner).

One of the contested issues at trial was motive. Initially, Gleason had succeeded in keeping out information that Tatro was a user of marijuana and was paid in amounts for his personal use. However, Gleason opened the door on motive, and the Court, reversing itself, permitted the government to put in evidence of motive. This was highly prejudicial to Tatro.[5]

Tatro was convicted by a jury of all five charges. Afterwards, he freely admitted his guilt and described his participation to the probation officer. The probation officer concluded that Tatro was responsible for the distribution of two hundred sixteen and ninety eight hundreths of kilograms (216.98) of marijuana which in the lexicon of guidelines is offense level twenty six. This offense level was increased by two points for abuse of a position of trust pursuant to U.S.S.G. § 3B1.3 and an additional two points for obstruction of justice pursuant to U.S.S.G. § 3C1.1. After trial, the Court did not reduce this sentence calculation for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. At the end, his offense level was thirty. As Tatro had zero criminal history points, he was in criminal history category I with a sentencing range of ninety seven to one hundred and twenty one months. He was sentenced to ninety seven (97) months in prison.

Gleason recorded a *pro forma* objection to the pre-sentence report, that the evidence did not support the calculation of drug weight nor the enhancements for obstruction of justice and

---

[5] This issue is not a violation of a constitutional right, and is not the basis upon which this petition is filed.

4

abuse of trust. (See addendum to pre-sentence report at pages 3-5). He made no reference to the language of the guidelines, to any specific evidence in the case[6] nor to any case law. Although Tatro had requested that Gleason seek a downward departure for his military service, and had sent him, United States v. Pipich, 688 F. Supp 191 (D.C. Md 1988), as authority for this motion, Gleason failed to mention it. (See affidavit of petitioner). Even when the Judge invited Gleason to make an argument for a sentencing departure and stated in open court that the resulting sentence of ninety seven months, obligatory under the guidelines then in effect, was harsh for this particular defendant. (TR1/30/02 at page 40).[7] Neither Gleason nor Tatro were prepared for the sentence.[8]

In the appeal, Gleason raised only one point. He argued that his client's use of marijuana should have been excluded. He did no raise any sentencing objections nor any other arguments. After the appeal was summarily rejected by the First Circuit Court of Appeals, Gleason immediately filed a petition for review *en banc*. Although the Court declined to review the matter *en banc*, Tatro did not learn of the denial for more than one year, when his lawyer finally notified him of the decision by mail. (See affidavit of petitioner).

While Gleason promised to file a motion pursuant to 2255, he never followed through, and never informed the defendant of the deadline. (Affidavit of petitioner). Further facts are described in the relevant argument sections.

---

[6] He did attempt to argue the evidence at the dispositional hearing.

[7] Citations to the trial transcript are TR/date and page.

[8] The misapplication of the sentencing guidelines here is not an error of constitutional dimension and does not form the basis of this petition. Rather it demonstrates that neither Gleason nor Tatro knew about the guidelines.

5

## IV. WHY THIS PETITION IS TIMELY FILED.

The statute of limitation for filing a petition for relief pursuant to 28 U.S.C. § 2255 under the terms is one year from the latest of:

"(1) the date on which the judgement or conviction became final; or

(2) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."

The Constitution of the United States authorizes the tolling of certain deadlines for equitable reasons. David v. Hall, 318 F.3d 343 (1st Cir.2003). The doctrine of equitable tolling applies to petitions filed under 28 U.S.C. § 2255. Joost v. United States, 336 F. Supp. 2d 185 (D.C. R.I. 1998). The deadline will be enlarged when "extraordinary circumstances beyond the claimant's control have prevented the timely filing or the claimant was materially misled in missing the deadline." Trenkler v. United States, 268 F.3d 16,25 (1st Cir. 2001). The error must "present exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." Id. (quoting Bowen v. Johnston, 306 U.S. 19, 27, 83 L. Ed. 455, 59 S. Ct. 442 (1939); Fasano v. Hall, 615 F. 2d 555, 557 (1st Cir. 1980).

The government argues that the original judgement was issued by the First Circuit, on December 20, 2004 and the appellate decision became final on March 20, 2003. Were this correct, the opportunity to file a petition, under 28 U.S.C. § 2255 expired on March 20, 2004. (Government's opposition at page 3).

Tatro disagrees with this calculation. The government is correct that an appellate decision becomes the final judgement ninety days after the judgement has entered, if no writ of certiorari has been filed by that date. However, the filing of a request for a rehearing *en banc*

6

extends this period. The request for a rehearing *en banc* was denied on March 5, 2003 and the mandate issued on March 20, 2003. Tatro had ninety days from March 5, 2003 to file a writ of *certiorari* pursuant to Rule 13 (3) of the Rules of the Supreme Court. This rule provides:

> "The time to file a petition for a write of certiorari runs from the date of entry of the judgement or order sought to be reviewed, and not from the issuance date of the mandate... But if a petition for rehearing is timely filed in the lower court by any party, the time to file the petition for a writ of certiorari... runs from the date of the denial of the petition for rehearing."

The date of the denial was March 5, 2003. Therefore, the ninety days expired on June 3, 2003. The deadline to file a petition under 28 U.S.C. § 2255 was June 2, 2004. The United States Supreme Court has so stated in Clay v. United States, 537 U.S. 522 (2003). As the Court held:

> "Here, the relevant context is postconviction relief, a context in which finality has a long-recognized, clear meaning: Finality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the filing a certiorari petition expires."

Here, the April 9th, 2004 letter, treated as a petition, was timely filed.

In the alternative, the statute should be tolled for equitable reasons. Tatro has the burden of proof to establish that conditions warrant the Court's exercise of it's equitable authority to toll the statute. Trenkler v. United States, 268 F.3d 16, 25 (1st Cir. 2001).

The government is correct that "usually" attorney error will not toll the statute. Sanchez v. Hall, 2001 U.S. Dist LEXIS 20435. A miscalculation of the filing deadline by the attorney or an unanticipated delay in the delivery of the mail will not toll the statute. United States v. Marcello, 212 F. 3d 1005 (7th Cir. 2000). Sandvik v. United States, 177 F.3d 1269, 1271 (11th

7

Cir. 1999). However, in this case, the late filing was caused by affirmative misrepresentation of the attorney. In such cases, the actions of the attorney may constitute the "extraordinary circumstances" that toll the statute. The District Court of Columbia noted that "an attorney's behavior may be so outrageous or incompetent as to render it extraordinary" United States v. Pollard, 290 F.Supp 2d 163 (D.C. 2003), citing Baldayaque v. United States, 338 F. 3d 145 (2d Cir. 2003). Baldayaque's attorney failed to file a § 2255 petition and did not keep his client "reasonably informed about the status of his case." Like Tatro, Baldayaque affirmatively relied on his attorney who neither filed a petition nor advised him of the deadline by which he needed to apply. These actions were considered "extraordinary" and warranted relief from the statute of limitations Id. Baldayaque v. United States, 338 F.3d 145 (2d Cir. 2003).

Here, the attorney's failure is not that he only missed the deadline, David v. Hall, 318 F.2d 343, 346 (1st Cir. 2003) he misrepresented events to Tatro, constituting the ineffectiveness of counsel, with constitutional magnitude. As in Trenkler, this affirmative misrepresentation is grounds.

## V. ARGUMENT

### A. Counsel was ineffective at trial, in the appeal and in post-conviction relief.

The attorney was ineffective, in violation of Tatro's Sixth Amendment rights as more particularly described below at trial, in his appeal and in post-conviction relief. An attorney is ineffective when his or her performance falls below (1) "an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668 (1994) and (2) "There is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. Ineffectiveness is "a mixed question of law and fact." Id.

- **Tatro's attorney never advised him of a plea offer nor attempted plea negotiations on his behalf.**

There is a factual dispute concerning whether Gleason ever explained the operation of the sentencing guidelines, the potential sentencing exposure after trial, or conveyed a plea offer to Tatro. Gleason states that Tatro rejected an offer from the United States attorney who would have recommended a two year sentence if he pled guilty before trial. Gleason told Robert Tatro and his wife, the petitioner's brother and sister-in-law, that he had a letter from the government which documented this offer. (See affidavit of Lenore Glaser). Michael Ricciuti, the assistant United States attorney, the prosecutor in this case, is certain that, in accordance with his usual practices, he had two conversations with Gleason in which he invited a plea discussion. But, he never had a conversation with Gleason involving concrete numbers, as Gleason told him that Tatro was not interested in a plea. He also never produced a written draft plea offer of any sentence or specifically a two year sentence.

Tatro asserts that Gleason never discussed the sentencing guidelines with him, his exposure after trial or the reduction of the guideline sentence for "acceptance of responsibility." He certainly was never offered a plea agreement of two years which he certainly would have accepted had he been so informed. He also would have pled guilty to the charges had he known that the total sentencing calculation would be reduced by three points for acceptance of responsibility. (Affidavit of petitioner). There is no apparent guideline calculation argument consistent with this case, which could have placed Tatro at level seventeen, the highest level available for a two year sentence.

The failure to convey a plea agreement to a criminal defendant has been held to be

9

prejudicial to a defendant and satisfies the first prong of the Strickland test. United States v. Rodriguez, 929 F.2d 747 (1st.Cir. 1991); Griffin v. United States, 330 F. 2d 733 (6th Cir. 2003). The failure to educate a defendant on his potential sentencing exposure is likewise prejudicial. Indeed, Judge Young opined that:

> "Surely it is not too much to expect defense counsel to advise a client of the expected results of the mandated mathematical calculations of the Sentencing Guidelines should the client decide to plead guilty. In today's utterly formula-driven sentencing regime, such failure is manifestly deficient."

Berthoff v. United States, 140 F. Supp. 2d 50, 58 (D.C. MA. 2001). (See Turner v. Tennessee, 858 F.2d 1201, 1205 (6th Cir. 1988). ["an ill-advised decision to go to trial is a violation of the Sixth Amendment."]

Although the First Circuit in an unpublished decision in 1992 held that the miscalculation of a sentence must be gross to be ineffective, Riviezzo v. United States, 1992 U.S. App. Lexis 15161 (1st Cir. 1992), here, there was no calculation at all. The First Circuit has held that :

> "A defendant has a right to be informed by his counsel of a plea offer. Ordinarily, counsel's failure to do so constitutes ineffective assistance of counsel. Johnson v. Duckworth, 793 F. 2d 898, 901 (7th Cir.), *cert. denied*, 479 U.S. 937, 93 L. Ed. 2d 367, 107 S. Ct. 416 (1986); United States ex rel. Caruso v. Zelinsky, 689 F. 2d 435, 438 (3rd Cir. 1982). Accordingly, the assertion by a § 2255 petitioner that counsel... failed to inform the petitioner of a plea offer by the government constitutes a sufficient allegation of "adverse effect" on representation to warrant a hearing."

United States v. Rodriguez Rodriguez, 929 F.2d 747 (1st Cir. 1991). Accord: Saccoccia v. United States, 42 Fed. Appx. 476 (1st Cir. 2002).[9]

To evaluate the second prong of the Strickland test, the Court must determine as an issue

---

[9] This is an unpublished decision.

10

of fact, whether the defendant was advised of the sentence consequences with respect to the United States Sentencing guidelines then in effect. It must also determine whether plea options were explored, and whether a specific offer was relayed to the petitioner by his attorney. If the Court finds that these conversations never took place, it must decide whether this failure made a difference. It must decide whether the petitioner's statement is true that he would have accepted a plea had he understood the advantages.

The Court may substantiate the credibility of the defendant that he would have pled guilty if so invited, by the disparity in the offered recommendation and the actual sentence. Griffin v. United States, 330 F. 3d 733 (6th Cir. 2003).

- **Tatro's attorney never explained his potential sentencing exposure.**

Tatro still may challenge the ineffectiveness of his counsel even if assuming *arquendo* he rejected a plea offer and went to trial, if he relied on the misadvise of his attorney regarding sentencing (Rodriguez, supra. at page 753, n.1). Counsel's evaluation of a plea offer must include an assessment of the chances to win at trial, the probable increase in sentencing after trial (with or without an agreement with the government), whether the defendant has steadfastly maintained his innocence and the defendant's total comprehension of the case. Purdy v. United States, 208 F. 3d 41, 44-5 (2d Cir. 2000).[10] As noted above, this never happened.

- **Tatro's attorney neglected his safety valve option.**

In 1994, Congress passed a resolution and the Sentencing Commission enacted a guideline, known as "the safety valve" to provide an escape from mandatory minimum sentences

---

[10] His attorney told this counsel that Tatro admitted his culpability in their second or third meeting. (Affidavit of Lenore Glaser).

11

that did not differentiate between serious repeat offenders and those who were least culpable. 18 U.S.C. §3553(f); U.S.S.G. § 5C1.2.

U.S.S.G. § 5C1.2 (5) and § 3553 (f)(5) permit the defendant to provide a truthful accounting of his criminal activities <u>not later than the time of the sentencing hearing</u>. [Emphasis added]. Tatro's attorney never apprised him of the option of completing a safety valve proffer as part of a plea or, after the jury verdict.

Had he known about it, it is obvious from the record, that Tatro would have availed himself of that option at least after the jury verdict. Tatro made a detailed admission of guilt to the probation officer.[11] As a matter of law, a full statement to the probation officer does not satisfy the disclosure requirement of U.S.S.G. § 5C1.2. <u>United States v. Jimenez Martinez</u>, 83 F.3d 488,495 (1st Cir.1996). If indeed, counsel felt that he could satisfy the safety valve through this route, he was completely mistaken. One measure for this ineffectiveness is when the lawyer acts with disregard for the current state of the settled law. <u>United States v. Tse</u>, 290 F.3d 462 (1st Cir.2002). If Tatro had satisfied the safety valve and received two points for acceptance of responsibility, his total guideline sentence would be offense level twenty two at criminal history category one, without regard to mandatory minimum sentence. A sentence at the low end of this range, forty one months is less than half of his present sentence of ninety seven months.

While a guideline violation alone is not automatically basis for relief pursuant to § 2255, <u>Knight v. United States</u>, 37 F. 3d 769. 772 (1st Cir. 1994) it is when coupled with ineffective assistance. <u>Cotske v. United States</u>, 290 F. 3d 437(1st Cir. 2002).[12] Here, his lawyer failed to

---

[11] His attorney does not remember why he instructed him to do so.

[12] Gleason did not raise any of these grounds on Appeal, which is also ineffectiveness. Tatro reserves discussion of ineffectiveness on appeal.

12

argue that:

- The Court should not have increased his sentence for obstruction of justice.
- The Court miscalculated the amount of drugs.
- The Court should have adjusted downward for his acceptance of responsibility.

The adjustment for acceptance of responsibility is applicable when "the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S. G. § 3E1.1 (a). While only in -rare circumstances will a defendant who elects to go to trial qualify for this adjustment, this is such a case United States v. Baltas, 236 F.3d 27, 37 (1st Cir. 2001); see also U.S.S.G. § 3E1.1(a), App. Note 2 (1998) (noting that "in rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to trial"). The burden is on the defendant to demonstrate that he or she should have received the reduction. See United States v. Rosario-Peralta, 199 F.3d 552, 570 (1st Cir. 1999). Here, Tatro voluntarily expressed his culpability and remorse to the probation office. This case is distinguishable from those cases in which the defendant took the stand and denied his guilt. Here, the petitioner did no more than put the government's case to the test as is his constitutional right. He did not take the stand or deny his culpability.

Tatro asked his lawyer to request a reduction of his sentence in consideration of his honorable military service. (Affidavit of defendant). He cited his lawyer to United States v. Pipich, 688 F. Supp. 191 (1988). Although U.S.S.G. § 5H1.5 states that previous employment is not "ordinarily relevant", the Pipich court distinguishes military service because:

> "This Court is of the opinion that a person's military record is a relevant factor to be considered at sentencing, because it reflects the nature and extent of that person's performance of one of the highest duties of citizenship. An exemplary military record, such as that possessed by this defendant, demonstrates that the

13

person has displayed attributes of courage, loyalty, and personal sacrifice that others in society have not. Americans have historically held a veteran with a distinguished record of military service in high esteem."

The First Circuit has held that, in light of Koon v. United States, 116 S.Ct.2035, 2053 (1966), specific employment characteristics are discouraged but not forbidden. United States v. Olbres, 99 F. 3d 28, 32-36 (1st Cir. 1996).[13]

**B. The recent decisions in Booker and FanFan require the Court to vacate this sentence.**

At sentencing, the trial Court acting as the fact finder increased Mr. Tatro's sentence by two points for obstruction of justice and two points for abuse of a position of trust. These sentencing increases were not decided by the jury beyond a reasonable doubt. In anticipation of these decisions, this Court has held in United States v. Sisson, 326 F. Supp. 3d 203 (D.Mass 2004) that:

> "the Court shall handle the sentencing as courts handled sentencing before theGuidelines -- by making a full examination of an individual defendant's personal character, family responsibilities, medical and mental condition, criminal record, and the particular circumstances surrounding the crime and imposing an appropriate sentence within the broad range set by Congress, after deep reflection informed by his [**4] experience in life and in the law. Despite a return to an indeterminate sentencing scheme, the Court "will continue to rely on the Guidelines as recommendations worthy of serious consideration."

**VI. THE PETITIONER IS ENTITLED TO AN EVIDENTIARY HEARING.**

Although an evidentiary hearing is not a matter of right, United States v. McGill, 11 F.3d 223,(1st Cir. 1993). it is the better practice when, as here, there is a detailed, specific dispute of fact. Machibroda v. United States, 368 U.S. 487 ( 1962). As in United States v. Tse, 290 F.3d

---

[13] The facts of Oblres are completely different than here.

462 (1st Cir.2002), the petitioner is entitled to an evidentiary hearing to determine what advice was given by counsel.

> The First circuit recommends that the Court take
>
> a "pragmatic approach" to the question of whether, in a given situation, an evidentiary hearing is required. The key determinant is whether, "given the nature and circumstances of the case . . . the parties [had] a fair opportunity to present relevant facts and arguments to the court and to counter the opponent's submissions."

In Re: Grand Jury Subpoena, 274 F.3d 563 (1st Cir.2001). Here, the Assistant United States Attorney, the trial counsel and the defendant disagree on the nature of the plea agreement discussions, the review of the sentencing guidelines and the safety valve. Only an evidentiary hearing will resolve this dispute.

### VII. CONCLUSION/REMEDY SOUGHT

For these reasons, the petitioner asks that this Court, to grant a writ of *habeas corpus*, vacate the judgement and conviction, and order any other relief that it deems appropriate and just.

Respectfully submitted,
DOUGLAS TATRO
By his attorney

_____
Lenore Glaser, Esq.
25 Kingston Street, 6th Floor
Boston, MA 02111
(617) 753-9988
BBO #: 194220

February 1, 2005
Dated

15

## CERTIFICATION OF FACTS

I, Lenore Glaser hereby certify that the facts asserted in this petition with incorporated memorandum of law are true, to the best of my knowledge and ability.

_____
Lenore Glaser, Esq.


## CERTIFICATE OF SERVICE

I, Lenore Glaser, certify that a true copy of this document was hand delivered to the United States District Court, One Courthouse Way, Boston, MA 02210 and hand delivered to Nancy Rue, Assistant United States Attorney, U.S. District Court, One Courthouse Way, Suite 9200, Boston, MA 02210 on February 1, 2005.

_____
Lenore Glaser, Esq.