UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **DOUGLAS E. TATRO** | ) |
| | ) |
| v. | )   Civil No. 04-CV-11509-RWZ |
| | ) |
| | ) |
| **UNITED STATES OF AMERICA** | ) |

SUPPLEMENT TO
GOVERNMENT'S OPPOSITION AND RESPONSE TO MOTION TO
<u>VACATE AND CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255</u>

### Summary

Douglas Tatro has moved under 28 U.S.C. § 2255 for relief from his sentence based on ineffective assistance of counsel. Tatro's appointed counsel argues eloquently that his previous counsel was ineffective. However, because the motion and the record prove the opposite, and prove that Tatro's conviction and sentence are the result of his conduct, rather than his lawyer's, this motion should be denied.

### Background

The Government has set forth the background to this case in its initial response, pages 1-2.

### Argument

I. **Timeliness.**

The undersigned counsel erred in calculating the statutory period for filing a motion under § 2255 in the government's initial response by not including the period for petitioning for certiorari. The government concedes that the motion filed on April 9, 2004, was timely.

**II.   Tatro's Motion Fails on Its Merits.**

In the revised Motion filed by appointed counsel, Tatro asserts that trial counsel was ineffective on three grounds:

1 -  Trial counsel did not advise him of a plea offer and did not attempt to negotiate a plea agreement

2 -  Trial counsel did not explain the Sentencing Guidelines, and the potential impact of a plea

3 -  Trial counsel did not take advantage of the safety valve.

Tatro's arguments lack merit.  In essence, Tatro argues that if he had known that he would receive the sentence that he ultimately received, he would have pled guilty and avoided that sentence.  Therefore, he argues, his trial counsel was ineffective for not having persuaded him to plead guilty.  As set forth more fully below, even accepting as true Tatro's assertions regarding conversations with his counsel (which are contradicted by counsel's letters to Tatro), these contentions do not constitute a <u>Strickland</u> violation.

   **1.   Trial Counsel Did Not Advise Him of a Plea Offer and Did Not Attempt to Negotiate a Plea Agreement.**

Tatro contends that his counsel did not advise him of a plea offer.  Tatro now implies that there was an offer of a sentence of two years that was not conveyed to him, and that if that offer had been conveyed to him, he would have taken it.  Therefore, he asserts that his counsel was ineffective.  Each aspect to this argument is erroneous.

2

      A.    Tatro's accusation that Gleason withheld information about a plea offer is without factual basis

First, the record shows that, in fact, there was no plea offer. <u>See</u> Affidavit of Lenore Glaser, attached to Motion, para 13 ("Ricciuti never did a draft plea agreement . . . ."). There is no basis in the record or elsewhere for believing that U.S. Attorney Michael J. Sullivan would have approved a plea agreement that offered Tatro anything other than a reduction for acceptance of responsibility, given that Tatro claimed he had no ability to cooperate, that he "didn't have anybody to roll over on." Disposition at 27. Therefore, the assertion that he was denied the chance to make a decision on a two year sentence is misguided: there was no such opportunity, and there is no basis on this record for believing that any counsel could have created that such a choice.

      B.    The record shows that the decision not to plead guilty was a tactical decision.

Every decision to go to trial rather than seek a lower sentence by pleading guilty looks erroneous after the jury returns a guilty verdict and the defendant is led away in shackles. In this case, however, the record is clear that it was a knowing, considered decision.

In this case, Gleason, the counsel who is alleged to be ineffective, states quite clearly at sentencing, in front of the defendant, why there was no attempt to enter a plea agreement:

> [He] put the government to their burden of proof because he's got a family. It's the easiest thing in the world to accept

>           responsibility.  Accept what?  Be ruined?
>           Whether it's two years or five years or ten
>           years, he's ruined.

Disposition, at 23.  Defendant told the Court that he chose to fight the evidence and seek an acquittal because a guilty verdict would mean ruin, regardless of the sentence.  "Whether it's two years or five years or ten years, he's ruined."  Indeed, counsel explained at sentencing that from Tatro's point of view, he was doing the responsible thing by affirmatively refusing to accept responsibility:

>           [T]he easiest thing to ask for from somebody
>           is acceptance of responsibility.  But when
>           that is going to lead to when there are other
>           facts, a single guy comes in here and doesn't
>           accept responsibility, I guess you can draw
>           one conclusion; but if the acceptance of
>           responsibility means that it's quite likely
>           if not probable that he's putting his
>           triplets and wife on poverty row, then the
>           question becomes: Where does one meet its
>           responsibility?

Id. at 27.

   Therefore, viewing the facts relating to the decision to plead at the time of the decision, rather than with the clarity of post-sentence hindsight, it appears that Tatro made a determination that he had to go to trial and seek an acquittal because any sentence of imprisonment, regardless of the length, meant "ruin."

   Tatro had a triable case.  He had an argument, made effectively by his counsel throughout the six-day course of trial, that there was no conclusive physical evidence against

4

him, and therefore the government's case rested on career criminals who were trying to help themselves by accusing Tatro. The decision to take this case to a jury was not an irrational gamble for a man whose alternative was "ruin."

Accordingly, the government respectfully submits that Tatro's assertion that Tatro's counsel was ineffective for failing to negotiate a plea is without merit.

    **2.   Trial Counsel Did Not Explain the Sentencing Guidelines, and the Potential Impact of a Plea.**

Tatro's assertion that his counsel deprived him of the opportunity to make an intelligent decision about whether to plead guilty by failing to tell him about the sentencing guidelines is flatly contradicted by his own record.

The only benefit to which Tatro was eligible for pleading guilty was the three-point reduction for acceptance of responsibility; the enhancements for obstruction of justice and abuse of public trust would not have changed.  Tatro implicitly argues that he did not understand that a reduction for pleading guilty was possible, and that his counsel was ineffective for not explaining this to him.

Tatro's claim defies credibility.  Tatro is in essence stating that he lacked the sophistication to understand that some benefit in sentencing is usually available to persons who plead guilty.  For Tatro to claim such a naivete and lack of sophistication is flatly contradicted by his own record.  Tatro provided his counsel with a case citation to United States v.

5

Pipich, 688 F. Supp. 191 (D. Md. 1988), in order to encourage counsel to make an argument that Tatro was entitled to a downward departure from the Guidelines range for his military service.[1] Tatro, therefore, by his **own** research and by his own admission, knew of the Sentencing Guidelines, and knew of the importance of determining bases for downward departures. It defies credibility, therefore, that Tatro claims not to have understood that those Guidelines would give consideration for a guilty plea. Moreover, it defies common sense to assert that Tatro's counsel – receiving specific case citations from his client on the finer points of Guidelines' sentencing – should have expected that his client did not understand the rudimentary concept that a person who accepts responsibility for his crime and pleads guilty may get a more favorable sentence than one who denies his guilt but is nevertheless convicted. Accordingly, this argument has no merit.

**3 –   Trial Counsel Did Not Take Advantage of the Safety Valve.**

Finally, Tatro argues that his counsel was constitutionally

---

[1] The Pipich case addressed a Vietnam combat veteran who had earned two Purple Heart awards, 45 Air Medal awards, and an award for heroism for extracting a trapped reconnaissance team at nighttime surrounded by North Vietnamese forces. In that case, the Court determined that a downward departure to probation was warranted for a post office employee accused of stealing matter from the mail based on Pipich's extraordinary wartime record. By contrast, Tatro, according to the Pre-Sentence report, had a non-remarkable record of non-combat military service, which he quit because it did not pay well enough. PSR at ¶¶ 108-13. Therefore, the case did not in fact support downward departure on Tatro's facts.

ineffective by failing to seek a safety valve proffer.  The government recognizes that in certain cases, such a failure may have implications under § 2255.  However, this is not such a case.

In this case, Tatro had a clear strategy at trial and at a sentencing.  At trial, he had a clear theme:  Tatro was not guilty, and was being accused by career criminals who would say anything to obtain a 5k1.  His strategy, consistently, from opening, through each cross-examination, and on to closing, was to challenge the government's proof as either not credible or not proof of guilt.  Tatro attacked the government's witnesses as convicts looking for someone else to blame in order to cut a better deal for themselves, and attacked the government's physical evidence as non-inculpatory.² Ultimately, the trial strategy did not prevail, and Tatro was convicted.

At sentencing, Tatro again had a clear theme. Counsel presented Tatro as a victim of his failure to cut a deal.  He argued that Tatro was the least culpable of the persons charged, because he had received the least benefit, obtaining only drugs for personal use, versus the other defendants' presumed profits. He sought to minimize Tatro's role in the conspiracy, arguing in

---

²The primary physical evidence against Tatro consisted of post office box applications with Tatro's fingerprints on them. Tatro argued that Tatro had touched these cards in the course of his normal duties -- as well as hundreds of other application cards -- and therefore that the presence of his prints on the cards was simply insignificant.

7

favor of a role adjustment as a minimal participant, and against the enhancement for obstruction and abuse of trust. He presented Tatro as a victim, the only defendant who had no one to turn on, who was being punished for simply putting the government to its proof. Disposition, <u>passim</u>.

Given his sentencing theme, a safety valve proffer would have been counter-productive. In a safety valve proffer, Tatro would have had to admit to the full scope of his activity.[3] This would have involved, among other things,[4] admitting to the obstruction. Given that Tatro was arguing that the 2 point

---

[3] Tatro asserts in his motion and affidavit that he made a full confession to probation after his conviction. However, there is no indication in the record that that is true. The PSR states only that defendant stated that "he takes responsibility and that he knew what he did was wrong." The undersigned contacted the Probation department, and there is no indication in the record that he provided more information than to acknowledge that the jury's verdict was correct. This is far from providing:

> all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan

as required by 18 U.S.C. § 3553(f)(5) and USSG § 5C1.2(a)(5).

[4] The government notes elects not to describe the full scope of items on which the government believes that Tatro would have had difficulty being forthcoming because if the Court is inclined to allow Tatro to attempt to proffer, notwithstanding his trial and sentencing strategy, the government does not wish to reveal the scope and sources of information which the government will use to test Tatro's veracity. However, it would obviously include acknowledgment that Tatro had provided marijuana to his brother, Michael, for distribution. <u>See</u> MJ 01-2025-MBB, Affidavit at ¶ 7. Tatro's acknowledgment of this would have likely resulted in an increase in the weight attributable to Tatro, would have undermined the "duped victim" theme that counsel presented at sentencing, and would have caused the indictment of his brother, on distribution charges.

obstruction enhancement should not apply, this alone would have neutralized the benefit of the two point reduction for the safety valve.

When arguing for application of the safety valve may detrimentally expand the record, "the decision to forego the safety valve argument was a reasonable strategy." Harris v. United States, 366 F.3d 593, 596 (7th Cir. 2004).  In this case, a full and truthful proffer would have been detrimental to the other arguments that counsel was making, and risked actually increasing the defendant's guidelines calculation.  Accordingly, the failure to seek a safety valve proffer for Tatro was not ineffective assistance of counsel.

## CONCLUSION

Based on the foregoing, the government respectfully requests that the Petition be denied.

>Respectfully submitted,
>
>MICHAEL J. SULLIVAN
>UNITED STATES ATTORNEY
>
>By: /S/ Nancy Rue
>    NANCY RUE
>    Assistant U.S. Attorney
>    One Courthouse Way
>    Boston, MA 02210

9