UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11509-RWZ

DOUGLAS TATRO

v.

UNITED STATES OF AMERICA

MEMORANDUM OF DECISION

October 12, 2006

ZOBEL, D.J.

Petitioner Douglas Tatro ("Tatro") was convicted after a six-day jury trial of participating in a conspiracy to distribute, and distributing, more than 100 kilograms of marijuana using the mail in violation of 21 U.S.C. §§ 846, 841(a)(1) and 843(b).[1] The court sentenced him to a term of imprisonment of ninety-seven months in accordance with the United States Sentencing Guidelines ("U.S.S.G."). Tatro timely appealed his conviction, and the First Circuit affirmed the judgment in a summary disposition. See United States v. Tatro, No. 02-1199 (1st Cir. Dec. 20, 2002).

Tatro has now filed a petition for writ of habeas corpus pursuant to 28 U.S.C. §§ 2241 and 2255,[2] alleging that he received the ineffective assistance of counsel.

---

[1] Tatro was tried and convicted on five counts: (1) one count of conspiracy to possess marijuana with intent to distribute it in violation of 21 U.S.C. § 846; (2) & (3) two counts of possession of marijuana with intent to distribute it in violation of 21 U.S.C. § 841; and (4) & (5) two counts of use of a communication facility to facilitate a controlled substance offense in violation of 21 U.S.C. § 843.

[2] On April 6, 2004, petitioner, acting pro se, wrote a letter to the United States District Court. Petitioner then wrote to the United States Court of Appeals for the First

Specifically, he has alleged that his attorney failed to: (i) inform him of a plea offer and enter into plea negotiations; (ii) explain adequately the potential sentence he could receive if convicted; and (iii) inform him of the possibility of receiving a reduction in sentence if he accepted responsibility under the Sentencing Guidelines and failed to argue that the court should have granted a downward adjustment for acceptance of responsibility.  This court held a hearing during which it heard testimony from the petitioner, his wife, Ann Tatro, and his trial counsel, Scott Gleason. The habeas petition is denied.

I.  **Background**

Tatro was convicted of participating in a conspiracy to distribute, and distributing, more than 100 kilograms of marijuana using the mail in violation of 21 U.S.C. §§ 846, 841(a)(1) and 843(b).  Testimony during the trial showed that Tatro, a supervisor with the United States Postal Service, allowed his co-conspirator to obtain access to post office boxes in exchange for marijuana for Tatro's personal use from 1990 through 1998.  Toward that end, Tatro falsified the postal box rental application with the name and address of a fictitious corporation.  In addition, Tatro notified his co-conspirator when a package of marijuana had arrived at the postal box for pick up.  Such packages arrived every week for a few weeks at a time; after a short hiatus, the shipments would continue.

---

Circuit, which ordered the letter to be treated as a 28 U.S.C. § 2255 habeas petition. See In re: Douglas Tatro, No. 04-1754 (1st Cir. June 30, 2004).  Petitioner was thereafter appointed counsel, who filed an Amended Petition for Relief Pursuant to 28 U.S.C. § 2255 on February 1, 2005, and diligently and most competently prosecuted the matter.

In 1994, after packages sent to a postal box at a post office in Topsfield, Massachusetts, were singled out by narcotics canines, postal inspectors began surveillance of the postal box. They arranged for a controlled delivery of certain drugs to the box. Tatro alerted his co-conspirator by telephone that a controlled delivery was on the way and instructed him not to pick up the packages since the postal inspectors were watching the box. After four or five days, the postal inspectors abandoned surveillance of the rental box in question.

Postal inspectors again investigated in 1998. During that investigation, they discovered that Tatro had altered postal records accessible only by supervisors to allow his co-conspirator to open at least three postal boxes under fictitious names. He altered one such record while serving as acting postmaster of the Rowley, Massachusetts, office. On this occasion the postal inspectors kept from Tatro any information about their purpose and activities, and succeeded in their quest.

## II. Analysis

In order to establish a claim for the ineffective assistance of counsel, a petitioner must demonstrate: (1) "that counsel's representation fell below an objective standard of reasonableness;" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). In evaluating ineffective assistance claims under Strickland, "there is a 'strong presumption' that counsel's strategy and tactics fall 'within the range of reasonable professional assistance.'" Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (quoting Strickland, 466 U.S. at 689); United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000 ) ("Actions or omissions by

counsel that might be considered sound trial strategy do not constitute ineffective assistance.") (internal quotations marks omitted).

### Counsel's Representation Was Not Deficient Under the First-Prong of Strickland

#### A.   Counsel's Alleged Failure to Inform Tatro of the Plea Agreement

Petitioner alleges that his attorney failed to advise him of a plea offer from the government and failed adequately to negotiate a plea. It is well-established that counsel's failure to advise a client of the existence of a plea offer constitutes constitutionally deficient representation under the first prong of Strickland. United States v. Rodriguez, 929 F.2d 747, 752 (1st Cir. 1991) ("A defendant has a right to be informed by his counsel of a plea offer. Ordinarily, counsel's failure to do so constitutes ineffective assistance of counsel."). Here, however, the record is devoid of any evidence of an existing plea offer from the government. (See Aff. of Lenore Glaser ¶ 13 ("Ricciuti never did draft a plea agreement . . . .")).

In addition, Tatro faults his attorney for failing to enter into plea negotiations. This argument is similarly unavailing. Whether Tatro told Attorney Gleason that he wished Gleason to engage in plea negotiations is a question of credibility. Despite Tatro's testimony to the contrary, I credit Gleason's testimony that he did not enter into plea negotiations at his client's instruction. (See Habeas Pet. Hr'g Tr., June 29, 2006 at 45, ll. 24-25; 46, ll. 1-2 ("Q: Why was your client opposed to a plea?  A: As stated as directly and forcefully as it could be 'My wife will divorce me. I cannot plead. I cannot admit to this.'")); see also Habeas Pet. Hr'g Tr., June 29, 2005 at 43, ll. 2-4 ("A: [h]is position is . . . as I've discussed, there's no plea, we're not discussing it, forget it. She'll

divorce me."); Habeas Pet. Hr'g Tr., June 29, 2005 at 51, ll. 13-18 ("Q: Mr. Gleason, do you have a specific recollection of discussing this particular topic with Mr. Tatro? A: Yes. Q: And what was his response? A: The same as it always was: 'I cannot cut a deal. My wife will divorce me. She will leave me. I cannot.'").

By contrast, Tatro testified that he was initially "in denial" about his participation and that he lied about his involvement repeatedly. (See Habeas Pet. Hr'g Tr., July 6, 2005 at 65, ll. 4-9 ("A: [] It's a hard thing to – when people are accusing you of a crime, to say you're guilty of it. That's why it took me a little while to – you know, when Mr. Gleason told me that, you know, we need to – I need to know the truth on all this, that's – I was in denial for a few weeks. I was covering up the fact that I was a user and that I was involved.").)

I credit Gleason's testimony in part based on observations of Tatro and his minimal statement at sentencing, which clearly suggested an inability to acknowledge his role in the crimes. Throughout the course of the trial, Tatro did not exhibit a willingness to plead even though he knew that his co-defendant, the perpetrator in chief, was cooperating and would testify against him. Even as the evidence against him mounted, he made no movement toward a plea. Indeed, during the sentencing hearing, the court addressed to Tatro a series of questions to elicit some suggestion that Tatro accepted responsibility, but he simply could not and did not take responsibility.

**B.    Counsel's Alleged Failure to Explain Tatro's Potential Sentence**

Petitioner further contends that his attorney failed to explain his potential sentencing exposure under the Sentencing Guidelines. See July 6, 2005 Habeas Pet.

Hr'g Tr. at 44-45, ll.10-25, 1-22.  Courts have held that failure to explain the potential sentence a client might be exposed to under the Sentencing Guidelines may constitute the denial of the effective assistance of counsel.  United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992) ("[w]e do not suggest that, to comply with the Sixth Amendment, counsel must give each defendant anything approaching a detailed exegesis of the myriad arguably relevant nuances of the Guidelines . . . [k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty"); see also Berthoff v. United States, 140 F. Supp. 2d 50, 58 (D. Mass. 2001) ("surely it is not too much to expect defense counsel to advise a client of the expected results of the mandated mathematical calculations of the Sentencing Guidelines should the client decide to plead guilty.").  Cf. Slevin v. United States, 71 F. Supp. 2d 348, 355 (S.D.N.Y. 1999), aff'd, 2000 WL 1528655 (2d Cir. Oct. 16, 2000) ("[c]ounsel need not provide his client with an estimate of the probable sentencing range that would be applied under the Guidelines . . . but should, however, explain the maximum and minimum statutory penalties applicable to the charges the client faces.") (internal citations omitted).

     Here, despite Tatro's assertions to the contrary, I credit Attorney Gleason's testimony that he did, in fact, explain the application of the Sentencing Guidelines to his client.  (See Habeas Pet. Hr'g Tr., June 29, 2005 at 50, ll. 21-25; 51, ll. 1-5 ("Q: Mr. Gleason, Mr. Tatro says you never told him that the guidelines even existed and you certainly never told him that there was a reduction for acceptance of responsibility. . . Q: [] what is your response? A: It's totally false. Q: Mr. Gleason, is there any doubt in your mind that you discussed the sentencing guidelines with Mr. Tatro?  A: There is

no doubt in my mind.")).  Accordingly, petitioner's claim fails.

### C. Counsel's Alleged Failure to Inform Tatro of the Possibility of a Downward Adjustment for Acceptance of Responsibility

Under the Sentencing Guidelines, courts may grant a downward adjustment of two levels[3] where the defendant "clearly demonstrates acceptance of responsibility for his offense."  U.S.S.G. § 3E1.1(a).[4]  In making its determination, the court is directed to evaluate whether the defendant "truthfully admitt[ed] the conduct comprising the

---

[3] This section provides for a two-level downward adjustment where the defendant "clearly demonstrates acceptance of responsibility for his offense."  U.S.S.G. § 3E1.1(a).  A further provision of the statute provides for an additional 1-level downward adjustment where "the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently."  U.S.S.G. § 3E1.1(b).  Petitioner is not contending that he should have been granted this one-level downward adjustment.  See Amended Pet. for Habeas Relief at 12 (contending that petitioner should have been given "two points for acceptance of responsibility").  Indeed, he could not have been granted the additional one-level downward adjustment because the statute requires petitioner to plead guilty prior to trial.

[4] Similarly, petitioner was eligible for a reduction in sentence pursuant to U.S.S.G. § 5C1.2, the so-called "safety valve" provision of the Sentencing Guidelines.  That section provides, in pertinent part: "in the case of an offense under 21 U.S.C. 841 . . . . the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum if the court finds that . . . (5) Not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement."  Petitioner's claims under this section are denied for the same reasons as are his claims under U.S.S.G. § 3E1.1 ("Acceptance of Responsibility").

offense(s) of conviction, and truthfully admitt[ed] or not falsely deni[ed] any additional relevant conduct for which the defendant is accountable." U.S.S.G. § 3E1.1 (comment 5). Moreover, the sentencing judge "is in a unique position to evaluate a defendant's acceptance of responsibility." Id.

Finally, with respect to "acceptance of responsibility," courts have held that neither the failure to plead guilty nor refusal to enter into a plea agreement precludes the application of the two-level adjustment for acceptance of responsibility. See United States v. Baltas, 236 F.3d 27, 37 (1st Cir. 2001) (noting that courts may grant a two-level downward adjustment for acceptance of responsibility even if the defendant went to trial). However, courts will only do so in "rare circumstances." Id. at 37.

As noted above, in this case, Tatro argues that Attorney Gleason did not inform him that he could reduce the guideline range by accepting responsibility for his actions, nor did Gleason argue that Tatro should receive an acceptance of responsibility adjustment.

The failure to inform a client of the possibility of obtaining a downward adjustment for acceptance of responsibility may constitute the denial of the effective assistance of counsel. See Berthoff v. United States., 140 F. Supp. 2d 50, 58 (D. Mass. 2001) (holding that counsel's failure to advise client about the possible reduction in sentence for acceptance of responsibility under U.S.S.G. § 3E1.1 was "manifestly deficient" under Strickland; but holding that there was no prejudice because petitioner "would not have pleaded guilty even had he been fully advised.").

In this case, however, I find that Attorney Gleason did advise his client to accept responsibility. Gleason testified during the habeas petition hearing that he had

8

"discussed the availability of a reduction of sentence for acceptance of responsibility" with Tatro.  (See Habeas Pet. Hr'g Tr., June 29, 2005 at 50, ll. 21-25; 51, ll. 1-5 ("Q: Mr. Gleason, is there any doubt in your mind that you discussed the availability of a reduction in sentence for acceptance of responsibility? A: Absolutely no doubt.").)  However, Gleason testified that Tatro was not interested in pleading guilty or admitting responsibility.  (See June 29, 2006 Habeas Pet. Hr'g Tr. at 23, ll. 13-24) ("Q: And had you advised Mr. Tatro to admit responsibility in that? A: I had asked him to.  He has indicated to me that he would give a general admittion [sic], period.").)[5]  Gleason also testified that he tried to get Tatro to accept responsibility but that he would not because he was still lying to his wife about the nature of his involvement.

I do not credit Tatro's testimony to the contrary.

### III. Conclusion

In conclusion, I find that Attorney Gleason's representation was not constitutionally deficient under the first prong of Strickland.  Therefore, I do not reach the question under the second prong whether Tatro can demonstrate that he was prejudiced by deficient representation.

---

[5] See also Habeas Pet. Hr'g Tr., July 6, 2005 at 15, ll. 2-11 ("A: And I had discussed, look, we are now at a very critical stage.  You've been maintaining to your wife throughout that you have had no involvement with this, no involvement with drugs, no involvement with any of these people, and you're about to be sentenced.  You've got to allow me to help you now.  You've got to – let me at least make some effort to get minimal role in terms of participation.  Give me something when we go to sentencing.  He was still insisting he couldn't because if he knew that if he had admitted to any involvement, that his wife would divorce him."); Habeas Pet. Hr'g Tr., July 6, 2005 at 17, ll. 5-9 ("Q: Did you intend to bring him to [the] U.S. Attorney's Office for a complete proffer of all involvement and, therefore, the eligibility for the safety valve? A: Did I – I couldn't under the circumstances because he was not – he refused and would not make a full disclosure.").

Accordingly, the petition for a writ of habeas corpus is denied.[6]

\_October 12, 2006_____           \_/s/Rya W. Zobel_____
DATE                                RYA W. ZOBEL
                                    UNITED STATES DISTRICT JUDGE

---

[6] Petitioner's remaining argument that United States v. Booker, No. 04-104, and United States v. FanFan, No. 04-105, 543 U.S. 220, 125 S.Ct. 738 (2005), require the court to vacate Tatro's sentence is without merit. This court is not required to vacate Tatro's sentence because the First Circuit has held that Booker and FanFan do not apply retroactively. Cirilo-Munoz v. United States, 404 F.3d 527 (1st Cir. 2005).