UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL NO. 04-11509-RWZ

DOUGLAS TATRO

V.

UNITED STATES OF AMERICA

---

### REQUEST FOR CERTIFICATE OF APPEALABILITY

---

1. Counsel's Representation Was Deficient Under the First-Prong of Strickland.

A. **The court erred in not finding that the testimony of Scott Gleason was not credible in whole, or at least in part because the conflicts in the statement of attorney Gleason to Petitioner's assigned attorney, the deposition testimony of Mr. Gleason and his testimony at the Habeas Petiton Hearing on June 29, 2005 are irreconcilable.**

The three distinct and irreconcilable versions of Mr. Gleason's prevarications are as follows.

  i.   In the affidavit of assigned attorney Lenore Glaser dated February 1, 2005 (in the court record) she states that Mr. Gleason told her that he did not know what she was referring to in her reference to the "safety valve" provision of the Sentencing Guidlines.

  ii.  This expression of ignorance by Mr.Gleason to Ms. Glaser is in his direct contrast to his deposition testimony of May 20, 2005 in which Mr. Gleason stated: "there were discussions with regard to the safety valve."

  iii. At the Hearing on June 19, 2005 Mr. Gleason stated again that there were discussions regarding the safety valve issue.

Accordingly, it was error on the part of the court to "credit Attorney Gleason's testimony" when , as indicated above, there is a clear conflict in his in court and out of court statements.

**B. The Court should consider the existence of extrinsic evidence showing a pattern of deceit by Mr. Gleason in regard to the information provided to his clients.**

1. On Page 22 line 14 of the deposition of Mr. Gleason he stated that he talked to all his clients in every federal case about the guidelines and about cooperating with the government, the so-called "safety-valve". This is not true. After the May 20 deposition I met one of Mr. Gleason's clients at FMC Devens Camp, one Brian Todd, also of Haverhill, Mass. Mr Todd told me that Mr. Gleason did not instruct him about a "safety-valve" or talk about the Federal Guidelines and that Gleason also told Mr. Todd that he had a very good chance of winning his charges at trial. Mr. Gleason also expressed his view to Mr. Todd that the government's case was weak. These are the same things that Mr. Gleason neglected to inform me of. Mr. Gleason said at the Habeas Petition Hearing that he instructed **all his clients**. Mr. Todd said he would be willing to testify of this fact at a hearing. There is an obvious pattern on Mr. Gleason's part in which he neglects to adequately inform his clients, then, upon their conviction, he falsely asserts the adequacy of his representation by asserting that he conducted himself in a manner consistent with an appropriate level of professional behavior. He does so by claiming that he provided advice to his clients that he never **in fact** provided. I, for one have been greatly prejudiced by Mr. Gleason's handling of my case. While acknowledging that my acceptance of responsibility was not immediate and fully contrite, the Court is begged to appreciate that Mr. Gleason was essentially feeding me with the notion that the government's case was shaky and that I would prevail at trial. This "advice coupled with my acknowledged difficulty in fully accepting responsibility, created an atmosphere of a client believing that his attorney had the matter under control. In fact, of course, Mr. Gleason had things far from under control and essentially walked me into the lion's den, a den that held for greater danger for me than he had advised me of.

**C. It was error for the court to not find that Mr. Gleason failed to inform me of plea negotiations and/or plea offer and the so-called "Safety Valve" provisions of the Sentencing Guidlines.**

The court's attention is once again drawn to the affidavit of my assigned attorney, Lenore Glaser, dated February 1,2005. In the affidavit, Ms. Glaser pointed out that my brother told her that Mr. Gleason told her that mr. Gleason told him that I had rejected a plea for two years. According to my brother (as related in the Glaser Affidavit) Mr. Gleason said that he had a letter from AUSA Ricuitti memorializing the offer. It is submitted, with all due respect, that the Court erred in crediting the testimony of Mr. Gleason.

* Mr Gleason never advised me of a plea negotiations
* Mr Gleason never indicated the availability of a plea bargain.
* Mr Gleason failed to provide me with a single scrap of paper indicating that availability of a plea and the opportunity to accept same: nor, despite Gleason's statement to my brother regarding the existence of a letter memorializing the plea offer, did Mr. Gleason produce such a letter. Of course, according Mr. Ricuitti, no letter exists.
* There exists an apparent contradiction between the testimony of Mr. Gleason's associate attorney Bill Boland, who stated that Mr. Gleason did in fact discuss the safety valve provisions of the Sentencing Guidelines with me. The fact that my attorney at closing remarks in the Habeas Petition Hearing pointed out that Mr. Gleason said he never used those words "safety valve" when talking to his clients. Either Mr. Boland's testimony was false (perhaps he was seeking to assist his law partner by preventing a determination that Mr. Gleason had provided ineffective assistance of counsel) or Mr. Gleason was not being truthful regarding the fact that he did not use the words "safety valve." Both statements cannot be true. Also see page 152 of the May 20, 2005 deposition (Gleason talked about safety valve **after trial**) and page 100 of said deposition (Gleason said that he did not use the words safety valve, contrary to the testimony of Mr.Boland.
* Significant contradictions are present with respect to the issue of the discussion, if any, of a "plea agreement."

In the Court's decision after the Evidentiary Hearing on June 29, July 6 and 14, 2005, it is stated that("Ricciuti never did draft a plea agreement....") and that Judge Zobel did credit Gleason's testimony that he did not enter into plea negotiations. However, there was testimony by Mr. Ricciuti at the evidentiary hearing that a verbal agreement was discussed between himself and Mr. Gleason. **On page 139 lines 12 of the hearing transcripts Mr. Gleason stated there was a plea agreement discussed** Mr. Gleason in his own words stated on page 34 Lines 11-21 that he talked to Mr. Ricciuti about an agreement or plea of one and a half years to two years. This is consistent with Mr. Gleason's deposition testimony at page 135, line 12; where he states in a discussion claimed to have taken place with me (which did not take place)-- "And that's when I said 18 to 24 months or 18 months or a year and a half to two years, I think, was the exact way I described it." Such testimony is completely contrary to Mr. Gleason's hearing testimony that such a sentence was not discussed due to my recalcitrance to plea to any charge. How can these statements be reconciled? It should be noted that there was testimony by Mr. Ricciyti at the ecidentiary hearing that a verbal agreement was discussed between himself and Mr. Gleason. On page 139 lines 12 of the hearing transcripts Mr. Gleason stated there was a plea agreement discussed. Mr. Gleason in his own words stated on page 34 Lines 11-21 that he talked to Mr. Ricciuti about an agreement or plea of one and a half years to two years. Under oath I stated Mr. Gleason **never** talked about any plea agreement discussion. Mr. Gleason stated that he was a trial lawyer and I believe that Mr. Gleason wanted to go to trial to strut his stuff and receive more fees for his time at trial Mr Gleason stated time and time again that he did discuss this plea agreement with me and I rejected it. Why as most all lawyers do was this not put in writing and signed off my me. <u>Johnson v. Duckworth.</u> 793 F. 2d898, 901 (7th Cir) <u>Caruso v. Zelinsky</u>, 689 F 2d 435, 438 (3rd Cir 1982) <u>U.S. v. Rodriguez Rodriguez</u>, 929 F. 2d 747 (1st Cir 1991) Accord <u>Saccoccia v. U.S.</u>, 42 Fed, Appx 476 (1st Cir 2002) This is an unpublished decision.

The point is that the record contains outright misrepresentations by Mr. Gleason, to me to Ms. Glaser and to the Court by Mr. Gleason. The Court found that Mr. Gleason's testimony was credible, however, it is respectfully submitted that Mr. Gleason should not be believed and that he did not provide adequate representation.

**D. It was error for the Court to refer to an incident in 1994 since the facts of the incident were not proven beyond a reasonable doubt.**

On page 3 of the Habeas Petition Decision (1st paragraph) The Court made reference to an incident in 1994. This time frame was not only past the statue of limitations but was not included in the charges contained in the indictment upon which I was tried. In the sentencing transcripts (also alluded to in the Habeas Petition Decision) your honor stated that you assumed, at least at the sentencing phase, that I was involved in an incident in 1994 upon which I was not charged, and thus you enhanced my sentence for obstructing justice.

**E. It was Error for the Court to not address my claim that it was in-effective assistance of counsel for Mr. Gleason to inadequately prepare a presentation for my sentencing in which, among other deficiencies, he failed to promote my military service as providing a basis for a downward departure.**

1. My Habeas Petition detailed my efforts directed at Mr. Gleason in which I brought to Mr. Gleason's attention the fact that my military service may have provided the Court with a basis for a downward sentencing adjustment. Mr. Gleason was certainly aware of my military background, yet, to my astonishment, he failed to propose an adjustment on that basis. I sent Mr. Gleason a letter (Exhibit A) and case law (Exhibit B) on the subject but it was unavailing.

2. The Court is reminded that at my sentencing your honor stated that you were not happy with the sentence that you had to impose. You pleaded with Mr. Gleason to give you anything, some additional argument so you could grant me a downward departure. In response to your inquiry Mr. Gleason froze. He was only able to re-iterate an argument that I should receive an adjustment for playing a minor role in the larger criminal activity. The Court should have evaluated

(5)

the claim made in my Petition and found that Mr. Gleason's failure
to pursue a sentencing adjustment for military service was far from
a lapse of judgment but rather a constitutionally defective performance.

**F. It was error for the Court to execute a note (Exhibit C) expressing
an opinion upon my claim of in-effective assistance of counsel and
to then, in an apparent reversal of the opinion clearly expressed
in the note, to deny my Habeas Petition.**

In the undated note (containing a notation that it was "SCANNED"
on 7/6/04) from the Court to Lisa A. Urso, you indicated, "This
is **in fact** a serious case of ineffective assistance at **trial and
sentencing.**"-emphasis added. Clearly, at a time on or before July
6, 2004, the Court had formed am opinion as to Mr. Gleason's trial
and sentence performance. Such opinion held and maintained at a
time for more contemporaneous to the time of trial than the Habeas
Hearing and thus is more likely to be based on the Court's observations
of Mr. Gleason at trial and sentencing. That the Court should have
recollected her opinion at the time of the preparation of the MEMORANDUM
OF DECISION dated October 12, 2006. After all, with the trial having
been held in 2002, the Habeas Hearing in 2005 and the note executed
sometime before July 6, 2004, it seems far more likely than not
that the Court's opinion as to Mr. Gleason's performance, clearly
and unambiguously memorialized in Exhibit C, was at that time an
accurate description of the Court's view. The Court is asked to
recollect the circumstances surrounding the writing of Exhibit C,
to determine whether the plain meaning of the note is, as suggested
herein, an unequivocal expression of the Court's view. And, on the
basis of such recollection, the Court is called upon to state that
it was error to fail to take the previous opinion into account and
to find that such error supports the issuance of a Certificate of
Appealabilty.

**D. It was error for the Court to not Apply United Ststes v. Booker
to Petitioner's Sentence Since a Sentencing Factor was utilized
by the Court that was not proven beyond a reasonable doubt.**

(6)

   Similarly, the fact that the 1st circuit has not required the re-sentencing of defendants who were sentenced before the Booker and Fan Fan line of cases, it should be required by the fact that the U.S. Supreme Court has ruled that if at sentencing if a sentence increases were not decided by the jury beyond a reasonable doubt that your honor should allow a certificate of appeal ability to let a higher court decide this constitutional law. The circuit court should have a chance or a higher court should have the chance to rule on these matters listed above.

Last month Attorney Glaser notified me that I had till January 8, 2007 to file for this Request, that her assignment to represent me had concluded and that she had requested the evidentiary hearing transcripts from the Habeas Petition. As of the date of the preparation of this application I have not received the transcripts. Unfortunately, I was concerned that if I asked for an extension of time to file this request for a Certificate of Appealability it would be denied and I would have missed the January 8th deadline. Similar time constraints Prevented me from seeking assigned counsel and have thus necessitated my pro se preparation of this request. I apologize to the Court for the failure, if any , to comply with local rules.

**Conclusion**
For the reasons stated above the Court should issue a Certificate of Appealability to the First Circuit Court of Appeals.

Respectfully submitted,

*Douglas E Tatro*
_____
Douglas E. Tatro


Sent Certified Mail Return Receipt
# 7099 3220 0006 6954 4132